UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY, | ) ) ) ) | CASE NO. 5:19-cv-913 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| GOODYEAR TIRE & RUBBER COMPANY, | ) ) ) ) | |
| DEFENDANT. | ) | |

Before the Court is the motion to section the subject tire (Doc. No. 77 ["Mot."]) filed by plaintiff Progressive County Mutual Insurance Company ("PCMI"). Defendant Goodyear Tire & Rubber Company ("Goodyear") filed its opposition (Doc. No. 78 ["Opp'n"]), and PCMI filed a reply (Doc. No. 79 ["Reply"]). For the reasons set forth herein, PCMI's motion is denied.

**I.  Background**

This products liability action arises from an event that occurred on July 9, 2017 involving a vehicle insured by PCMI. Malcolm Huston ("Huston") was driving a 2014 Aspire recreational vehicle ("RV") south on Interstate 59 in or near Lumberton, Mississippi, with a vehicle in tow, when the front passenger side tire of the RV (the "subject tire") catastrophically failed and caused the RV to leave the roadway and hit a tree (the "accident"). (Doc. No. 5, First Amended Complaint ["FAC"] ¶¶ 2, 6.) According to PCMI, the subject tire was "designed, manufactured, marketed, distributed, and warranted by Goodyear[,]" (*id*. ¶ 7), and the failure of the subject tire and the resulting accident rendered the RV a total loss and damaged the vehicle being towed. (*Id*. ¶¶ 7–8.)

PCMI further alleges that Huston submitted a claim to PCMI under the relevant insurance policy, and PCMI has paid to or on behalf of Huston a total of $226,462.58. As a result of its payments PCMI is subrogated to the rights of Huston to recover damages from third parties to the extent of its payments, and brings this claim as a subrogee. (*Id*. ¶¶ 10–12.) PCMI has asserted, among others, manufacturing defect claims against Goodyear.

On July 22, 2019, after holding a case management conference with counsel, the Court issued the Case Management Plan and Trial Order ("CMPTO") and adopted the parties' jointly proposed dates. (*Compare* Doc. No. 42, Report of Parties' Planning Meeting *and* Doc. No. 43, Case Management Plan and Trial Order (original).) Subsequently, on the parties' joint motions, certain dates in the CMPTO were amended. The first joint motion to extend the deadlines was filed one day before fact discovery was set to end; the Court granted that motion, which sought only short discovery deadline extensions. Two days before expert discovery was set to end, a second joint motion was filed seeking a 90-day extension of all dates and deadlines. That, too, was granted and resulted in the First Amended CMPTO. (Doc. No. 63.) Three days before that new expert discovery deadline, a third joint motion was filed seeking an additional 90-day extension of all dates and deadlines. The Court granted only a 60-day extension, resulting in the Second Amended CMPTO. (Doc. No. 66.)

Under the Second Amended CMPTO, issued on June 17, 2020, the expert discovery cutoff was extended to August 14, 2020, and dispositive motions were due by September 18, 2020. Goodyear timely filed a motion for summary judgment. (Doc. Nos. 71/72.) Because the briefing schedule for the summary judgment motion was subsequently extended on PCMI's unopposed motion, the Court continued the dates for the final pretrial conference and the jury trial. (*See* Order (non-document), 10/22/2020.) The summary judgment motion was finally at issue and ripe for

determination on January 14, 2021, after the opposition (Doc. No. 75) and the reply (Doc. No. 76) were filed.

Nearly six months after the close of expert discovery, on February 5, 2021, PCMI filed its motion seeking permission to conduct destructive testing on the subject tire. Prior to the close of expert discovery, PCMI produced its Rule 26 expert report and the expert was deposed. Goodyear likewise produced its expert report. (Mot. at 726 ¶ 3.)[1]

PCMI's expert has opined that "the tire blowout was caused by a manufacturing defect consistent with low adhesion of the liner component to the tire carcass, which reduced the life of the tire by allowing air and moisture to *permeate* through the tire causing early oxidation of the tire components, which weakened the carcass." (Mot. at 726–27 ¶ 4; 732 (emphasis added).)

PCMI's expert conducted destructive laboratory testing on a non-defective exemplar Goodyear tire (the "exemplar tire"). According to PCMI, sections cut from the exemplar tire were examined under microscope and FTIR[2] to inspect and analyze the bond between the various tire layers, thereby providing the expert with "a baseline for what the bond between the various tire layers should look like if there was good adhesion between them that would prevent air and moisture to permeate and cause oxidation to the components of the tire." (*Id*. at 727 ¶ 5.) PCMI's expert believes that "if there was a proper bond between the various tire layers during the manufacturing process, remnants of one layer should be found on the other layer, and vice versa."

---

[1] Page number references herein are to the page identification numbers applied by the Court's electronic filing system.

[2] Fourier-transform infrared ("FTIR") spectrometry "is a non-destructive test used to detect how much infrared light is absorbed by a material at each wavelength. The resulting spectrum gives a '*chemical footprint*' of the material which can be compared with spectrums of known materials to identify the chemical composition of the tested sample." (Mot. at 727 & n.2 (italics in original).) According to PCMI, FTIR technology "has existed for several decades [and] is well understood." (*Id*.)

3

(*Id*. ¶ 6.) "These 'remnants' on the various tire layers would be seen through the FTIR/microscopy inspections that [PCMI] is attempting to conduct." (*Id*.)

To that end, PCMI requests permission to cut out what it claims will be "very small" portions of the subject tire which, it claims, "would allow the parties to examine the surfaces of the tire under FTIR and microscopy and compare/contrast that to the results of the testing completed on the exemplar tire that revealed a sufficient bond between the tire layers." (*Id*. ¶ 7.)[3] PCMI asserts that the testing it proposes is identical to that already performed by its expert on exemplar tires. Goodyear objects to the testing for several reasons discussed below and in its response.

## II.     Discussion

Fed. R. Civ. P. 34(a)(1)(B) provides that a party may make a request for production to "inspect, copy, test, or sample . . . designated tangible things[.]" "Several courts have recognized that production of 'tangible things' for purposes of destructive testing falls under the scope of Rule 34." *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 613 (D. Md. 2006) (citing cases).

"Destructive testing . . . is not a matter of right, but lies in the sound discretion of the trial court." *Blackmore v. Polaris Indus., Inc.*, No. 10-cv-631, 2011 WL 2940646, at *2 (D. Colo. July 21, 2011) (quoting *Cameron v. Dist. Ct. in and for First Jud. Dist.*, 565 P.2d 925, 930 (Colo. 1977)). In *Cameron*, a case involving an allegedly defective tire, the Supreme Court of Colorado framed the issue of whether to permit destructive testing as one of "balanc[ing] . . . between the 'costs' of the alteration of the object and the 'benefits' of ascertaining the true facts of the case." *Cameron*, 565 P.2d at 929.

---

[3] PCMI proposed this same testing to Goodyear, but it declined. (Mot. at 733 & Ex. B.)

4

Applying *Cameron*, the court in *Mirchandani* identified four inquiries relevant to the balancing test:

> (1) [w]hether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; (2) [w]hether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; (3) [w]hether there are any less prejudicial alternative methods of obtaining the evidence sought; and (4) [w]hether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.

*Mirchandani*, 235 F.R.D. at 614. The moving party "may not use destructive testing merely to bolster an expert opinion or to gain other potentially intriguing, albeit irrelevant, information." *Id*. at 615. "The evidence sought must be integral to proving the movant's case and do more than strengthen an already established claim or defense." *Id*. This is "a more stringent standard than that applied to more routine discovery requests[.]" *Id*.; *see also Anaya v. Tricam Indus., Inc.*, No. 5:18-cv-01045, 2019 WL 5850554, at *2 (W.D. Tex. Sept. 19, 2019) ("Courts approach destructive testing of evidence with greater caution than other discovery requests, requiring the movant to show that the destructive testing is necessary or integral to the case.") (citing *Mirchandani*).

### A. Application of the balancing test

#### 1. Reasonable, necessary and relevant

PCMI argues that its expert's theory is that the various layers of the subject tire were not properly adhered to one another. PCMI wishes to further explore this theory by conducting the same destructive testing on the subject tire as its expert conducted on the exemplar tire and comparing the results.

In opposition, Goodyear correctly argues that PCMI has done no more than *describe* the testing it seeks, without *showing* that it is reasonable, necessary and relevant. (Opp'n at 751.)

5

Goodyear points out that PCMI's expert already produced his report over a year ago wherein he opined that the tire was defectively manufactured due to inadequate adhesion between the layers. Goodyear notes that any destructive testing would be solely for the purpose of bolstering that report. (*Id*. at 752.) This, Goodyear argues, ignores the bright line rule set forth in *Mirchandani* prohibiting such bolstering, a rule that has been "routinely followed to bar destructive testing, including in cases specific to tires." (*Id*. at 754, citing *Hawthorne v. Michelin Tire Corp.*, 100 F.3d 962 (Table, Text in WESTLAW) (unpublished disposition), 1996 WL 640481, at *5 (9th Cir. Nov. 5, 1996) (affirming the district court's denial of destructive testing because, since plaintiff's expert "had already reached his conclusion as to why the tire failed, the destructive testing was not 'necessary' to the [plaintiff's] theory of this case[.]"); *Campbell v. Pirelli Tire, LLC*, No. 12-cv-21153, 2013 WL 12092518, at *2 n.2 (S.D. Fla. Feb. 1, 2013) (holding that, because "the expert witness . . . had already reached his opinion that the subject tire suffered from design and manufacturing defects[,] . . . the proposed destructive testing is not integral to proving [p]laintiffs' case, but is being suggested merely to bolster [p]laintiffs' expert's already established opinion.").)

In its reply brief, PCMI argues that the testing it proposes "will assist *both parties* in their respective analysis." (Reply at 841 (emphasis added).) With all due respect to that possibility, Goodyear does not seem to agree. PCMI also argues that, since the parties' experts "have differing positions about the case and what the evidence reveals and how the loss occurred[,]" (*id*. at 842), that renders relevant the evidence that might be revealed through destructive testing.

In light of the case law, the fact that PCMI's expert has already opined that the reason for the subject tire's failure was poor adhesion between its layers, the destructive testing is neither integral to nor necessary for the expert to form an opinion or theory as to PCMI's case.

This factor weighs heavily in favor of denying the motion.

6

### 2. Prejudice to Goodyear

PCMI claims that "small sections of the tire" will be cut and analyzed (Mot. at 737) and provides photographs of the areas on the subject tire from which it would cut portions. (Mot. Ex. A.) It further claims that the cut-away portions will not be destroyed, but will be preserved for use at trial. In addition, PCMI asserts that before and after photographs will be taken, that "hundreds of pictures have ***already*** been taken of the subject tire and Goodyear's experts have had every chance to document the subject tire through photography and other non-destructive means." (*Id*. at 737 (emphasis in original).)[4] PCMI claims that "any potential prejudice to [d]efendant is far outweighed when balanced against the benefit that this type of testing would provide." (*Id*.)

In opposition, Goodyear argues that any destructive testing would result in its inability to use the tire in its preserved, post-accident form with the jury at trial. (Opp'n at 757.) Indicating that it intends to use the subject tire extensively with the jury, Goodyear claims that it would suffer great prejudice if the destructive testing is permitted, in that "[PCMI] proposes to remove multiple large sections of the [subject tire] directly from the area of the disablement thereby destroying Goodyear's ability to use the most important piece of evidence in the case to prove the absence of a defect and that over-[deflation] and impact is what caused this disablement." (*Id.* at 757-58 (footnote omitted).) It points to *Campbell*, *supra*, as an example of a case where the court denied destructive testing. Although the testing and treatment of the tire in *Campbell* is different than that proposed by PCMI, the Court finds that Goodyear, like the defendant in *Campbell*, will suffer

---

[4] Courts hold differing views on whether photographs are a suitable substitute for a three-dimensional object. *See, e.g.*, *Blackmore*, 2011 WL 2940646, at *2; *Campbell*, 2013 WL 12092518, at *3 (both finding that photographs are not a good substitute); *but see Ostrander v. Cone Mills, Inc.* 119 F.R.D. 417, 420 (D. Minn. 1988) (permitting destructive testing so long as plaintiff was permitted to be present and to videotape and/or photograph all the testing, unless defendant could show that such would unfairly compromise the viability of the proposed testing).

7

prejudice for the reason highlighted by Goodyear—the destruction of the most important piece of evidence in the case.

PCMI does not respond to Goodyear's assertion that the destructive testing would remove "large sections" of the subject tire, thus prejudicing Goodyear's ability to use it effectively before the jury, nor does PCMI give actual measurements of the sections it would remove.[5] Rather, PCMI simply asserts that only "small sections" of the subject tire would be removed and those would be preserved. In its reply brief, PCMI supplies a photograph of the "small section" that was removed from the exemplar tire in what it characterizes as an "identical test[]" to the one it now proposes for the subject tire. (Mot. at 733; Reply at 844.)

Apparently, "small section" is in the eye of the beholder because, judging from the photograph in the reply brief, this Court would not characterize the section as "small." In fact, although it is cut out of a completely intact tire, it still looks "large" in that it completely removes a significant portion—what appears to be roughly a fifth—of the tire sidewall. PCMI's proposal to remove an apparently "identical" section from the subject tire, which is not intact having been badly damaged by the accident, will result in removal of a proportionally larger section of what remains of the subject tire (*see* Reply at 845), thereby reducing drastically what will remain of the tire. It will, as Goodyear suggests, effectively destroy what is likely the most important evidence in this case.

---

[5] PCMI does say that the sections would be examined under "microscopy," which one *might* conclude would require quite small sections. But the Court will not draw that conclusion in view of the fact that it is PCMI's burden, as the movant, to show that the *Mirchandani* factors weigh in its favor. To make that showing, PCMI must clearly and accurately describe the proposed destructive testing. Here, PCMI merely asserts, without more detail, that "[t]he 'destruction' is the cutting of the tire to allow the sectioned pieces to fit under these machines." (Mot. at 738.)

The factor of prejudice to the non-movant, Goodyear, weighs heavily in favor of denying the motion.

### 3. Alternatives to destructive testing

PCMI argues that there are "no feasible alternatives that would permit the same detailed determination of the composition of the layers." (Mot. at 738.)

In opposition, Goodyear claims that PCMI's own expert has already used "numerous non-destructive methods of testing and evaluation to support its theory of the case." (Opp'n at 759.) It points to the expert's conclusion that "observable physical conditions . . . prove inadequate adhesion: 'areas of belt wire with inadequate rubber coverage and a bare belt wire appearance which was evidence of poor adhesion.'" (*Id.* at 752.) Goodyear argues that it bears repeating that any destructive testing at this juncture is solely for purposes of improper "bolstering" of the expert's opinion. (*Id*. at 759.)

In reply, PCMI asserts that, if there were a non-destructive way to perform the testing it seeks, it would use that method; but there is not. (Reply at 843.) It claims that, under Goodyear's argument, no destructive testing would ever be permitted.

Inasmuch as PCMI's expert has already—long ago—completed his report and rendered his opinion without the testing PCMI now seeks, additional testing of any kind—destructive or non-destructive—would be superfluous and mere bolstering.

This factor is neutral at best and, under the procedural posture of this case, weighs in favor of the non-movant, Goodyear.

### 4. Adequate safeguards

PCMI argues that "there are numerous safeguards that can and would be instituted to ensure prejudice is either minimal or nonexistent to Goodyear[.]" (Mot. at 738.) These safeguards include

permitting Goodyear to attend the laboratory examination and testing; allowing Goodyear to photograph the character and condition of the subject tire prior to destructive testing (which has already occurred); retaining and preserving the sectioned portions; permitting both sides discovery of the results of any tests performed; and permitting depositions of opposing experts about the testing procedures and the results. (*Id.* at 738–39.)

In opposition, Goodyear argues that all these safeguards are inadequate because there is only "one incident tire" in the case. It is "a singular piece of evidence, which the courts have rightly acknowledged is 'critical' and 'unique' and should be preserved for use at trial in 'an unaltered state.'" (Opp'n at 760 (citing cases).) Goodyear also argues that PCMI is overlooking the fact that "[h]alf the 'test' has already occurred, and Goodyear was afforded no role to ensure [the] appropriate safeguards [now suggested by PCMI]." (*Id*.) This reference is to all the testing that was already performed by PCMI on the exemplar tire, a process that did not include Goodyear or any of the proposed safeguards, but whose results PCMI wishes to compare to the results of any destructive testing that may be permitted. Therefore, Goodyear argues, any "safeguards" have already been compromised.

In reply, PCMI merely argues that "[i]t is unclear how removing a section of the tire for testing prejudices [Goodyear] given the minimal alteration that will be performed[,]" (Reply at 845), especially since "the tire [will] still be available, the section of the tire will still be available and photographs will still be available." (*Id*.)

Goodyear has the better view with respect to adequate safeguards. In order for any trustworthy comparison to be made between the testing of the exemplar tire and any testing on the subject tire, adequate safeguards were/are required for both. That did not occur with the exemplar testing and safeguards belatedly applied to testing of the subject tire cannot cure that discovery

deficiency. Moreover, as the Court previously discussed, the subject tire is a critical piece of evidence that should not be further disturbed.

This factor, on balance, weighs in favor of denying the motion.

### 5. Conclusion of the balancing

On balance, the *Mirchandani* test weighs in favor of denying PCMI's motion for destructive testing of the subject tire. But even if this were not the case, as discussed below, the Court finds that PCMI's motion should be denied on the basis that it is untimely.

### B. Reopening Expert Discovery

Given the posture of the case, Goodyear's opposition raises another issue—the requirements of Rule 16 with respect to scheduling orders. (*See* Opp'n at 748.) Goodyear points out that expert discovery (including the exchange of expert reports and the deposition of experts) has already long since concluded and that it has filed a summary judgment motion, which is fully briefed. Goodyear claims that PCMI's request "to re-open expert discovery is untimely and should be denied on that basis alone." (*Id*.)

In reply, PCMI concedes that expert discovery deadlines have passed and that the parties await this Court's resolution of Goodyear's dispositive motion. (Reply at 840.) It argues that resolution of the dispositive motion will not be impacted by any destructive testing that may be permitted since that motion relates only to the question of the economic loss doctrine, not to the merits of the products liability claims. It further argues that the final pretrial conference and trial date have yet to be set. And, without further explanation, PCMI asserts that "only after receiving [Goodyear's] expert report and discussing additional possibilities for testing did the [p]laintiff arrive at this conclusion [to request destructive testing]." (*Id*. at 840–41.)

11

As to PCMI's last argument, it appears from the briefing that Goodyear's expert has an entirely different theory for why the tire failed, which is unrelated to PCMI's theory regarding faulty adhesion. Therefore, it is not clear how receipt of Goodyear's expert report would have triggered PCMI's belief that it needed additional, destructive testing aimed only at the issue of adhesion. This last argument is readily discounted.

As for timeliness in general, Goodyear is correct that PCMI's current request—which amounts to a request to re-open expert discovery—is beyond untimely. The parties thrice sought and received extensions of the dates and deadlines in this case. The Second Amended CMPTO issued on June 17, 2020 extended the deadline for completing expert discovery by 60 days (from June 19, 2020 to August 14, 2020). At the time that CMPTO issued, the deadlines for the parties to supply their respective expert reports had already passed and were not reopened or extended (*i.e.*, January 16, 2020–deadline for party with burden of proof to supply report; February 17, 2020–deadline for rebuttal report).

Under Rule 16(b)(4), a case management scheduling order "may be modified only for good cause and with the judge's consent."[6] "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (internal quotation marks omitted). "A court should also consider whether the non-moving party is prejudiced by the proposed modification of a scheduling order." *Prewitt v. Hamline Univ.*, 764 F. App'x 524, 530 (6th Cir. 2019) (citing *Inge*). Although the Court has broad discretion to modify its own pretrial orders,

---

[6] *See also* Fed. R. Civ. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) . . . if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect.").

"'[a]dherence to reasonable deadlines is . . . critical to maintaining integrity in court proceedings,' and . . . pretrial scheduling orders are 'the essential mechanism for cases becoming trial ready in an efficient, just, and certain matter.'" *Ruiz-Bueno v. Scott*, No. 2:12-cv-0809, 2014 WL 347041, at *2 (S.D. Ohio Jan. 30, 2014) (quoting *Rouse v. Farmers State Bank*, 866 F. Supp. 1191, 1198–99 (N.D. Iowa 1994)).

PCMI has failed to show good cause for reopening expert discovery. Its argument that, only after it received Goodyear's expert report did it conclude it needed destructive testing, is unavailing because, presumably, Goodyear's report was supplied on or before February 17, 2020—PCMI does not argue otherwise. PCMI's current motion was filed almost one year later, on February 5, 2021. Even though Goodyear's pending dispositive motion may not be affected by any reopening of discovery, Goodyear would nonetheless be prejudiced by the fact that reopening would further extend the case management schedule, which, by itself, carries an element of prejudice by adding the costs of additional litigation proceedings. Nor is the Court persuaded by PCMI's assertion that no dates have been set for the final pretrial conference or trial. That is only true because PCMI requested an extension of time to oppose Goodyear's dispositive motion, which necessitated canceling dates that were already set. (*See* Doc. No. 73 and Order (non-document) dated 10/22/20.)[7]

The Court perceives no reason why PCMI could not have made its request for destructive testing in a timely fashion. That said, under the *Mirchandani* analysis above, the request would likely not have been granted; but untimeliness is a separate legitimate basis upon which to deny the request.

---

[7] For good cause shown, even this extended deadline was later further extended by about six weeks. (*See* Doc. No. 74 and Order (non-document) dated 12/30/20.)

13

### III. Conclusion

For the reasons set forth herein, PCMI's motion to section the subject tire (Doc. No. 77) is denied.

**IT IS SO ORDERED**.

Dated: May 21, 2021

                                                **HONORABLE SARA LIOI**
                                                **UNITED STATES DISTRICT JUDGE**